IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-01636-SKC-CYC

ELIJAH SMITH,

        Plaintiff,

v.

CITY AND COUNTY OF DENVER, *et al.*,

        Defendants.

---

ORDER RE: MOTION TO DISMISS (DKT. 33)

---

On June 12, 2023, for the first time in franchise history, the Denver Nuggets basketball team won the NBA Championship.[1] Dkt. 11, ¶1.[2] Following the win, Nuggets fans, including Plaintiff Elijah Smith and his friends, flooded the streets of downtown Denver to celebrate. *Id*. At the same time, Defendant Adam Glasby, a now-former Denver Police Department (DPD) officer, was working as a bouncer for Defendant Hayter's & Co., a local Denver sports bar. *Id*. at ¶¶1, 18. While Plaintiff and his friends were celebrating outside of Hayter's & Co., one of the friends got into

---

[1] Finally.

[2] These facts are from the Amended Complaint (Dkt. 11) and for the purpose of determining Denver's Motion to Dismiss, they are taken as true and construed in the light most favorable to Plaintiff.

1

a fight with another member of the crowd. *Id*. at ¶¶16-17. When Plaintiff tried to help his friend, Defendant Glasby grabbed Plaintiff from behind, lifted him off his feet, and slammed him headfirst to the ground, knocking him unconscious. *Id*. at ¶¶18-19. Defendant Glasby did not warn Plaintiff or identify himself as a police officer prior to accosting him. *Id*. at ¶18.

After Plaintiff regained consciousness, he was taken to the hospital and diagnosed with a brain bleed and damage to the nerves in his left shoulder. *Id*. at ¶¶23-24. Plaintiff then filed this case asserting claims against the City and County of Denver (Denver), Defendant Glasby, and Hayter's & Co. Dkt. 1.[3] He asserts claims pursuant to both the United States and Colorado Constitutions as well as common law tort violations. Dkt. 11.

Denver has filed a Motion seeking dismissal of Plaintiff's Fourth Amendment claim against it. Dkt. 33.[4] The Court has carefully reviewed the Motion, the related briefing, and the relevant law. No hearing is necessary. For the following reasons, Denver's Motion is respectfully DENIED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States. It has

---

[3] Plaintiff originally named Officer Ernest Sandoval as a Defendant, but he has since been dismissed from the case. Dkt. 83.

[4] The other parties have filed Answers to the Amended Complaint. Dkts. 34, 35.

2

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to

3

whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

Denver seeks dismissal of Plaintiff's Fourth Amendment claim on the basis he has failed to sufficiently allege the requirements of municipal liability under *Monell v. Department of Social Services*. The Court concludes Plaintiff has satisfied his burden and that dismissal on the pleadings would be inappropriate.

It is long-standing precedent that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (A governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. at 694-95, 698). "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d

4

1175, 1188 (10th Cir. 2010) (internal quotation marks and citations omitted); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) ("[T]he Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.").

To establish municipal liability under *Monell*, a plaintiff must show (1) a municipal employee committed a constitutional violation[5] and (2) a municipal policy or custom was the moving force behind the violation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). An official policy or custom under *Monell* may take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up).

Plaintiff alleges two theories of municipal liability: (1) custom, policy, or practice; and (2) a failure to supervise, train, and discipline. Dkt. 11, ¶¶150, 151. The

---

[5] Defendant Glasby has answered the Amended Complaint, and therefore, this element is not presently at issue.

Court, however, need address only one to determine whether the *Monell* claim survives—Plaintiffs' allegations regarding Denver's failure to train.

"In the absence of an explicit policy or an entrenched custom, the inadequacy of police training may serve as a basis of § 1983 liability . . . where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002). Deliberate indifference is established only when a city has actual or constructive notice that its actions or omissions are substantially likely to result in constitutional violations, and it deliberately chooses to disregard that risk of harm. *Canton*, 489 U.S. at 388; *Olsen,* 312 F.3d at 1318. "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).

Denver contends that Plaintiff has failed to allege a lack of training related to "hands-on contact in breaking up a bar fight." Dkt. 33, p.11. But in making such an argument, Denver recharacterizes the allegations of the Amended Complaint. According to the allegations, the incident between Plaintiff and Glasby did not occur during a bar fight but rather, under circumstances more akin to a protest. The pleading is explicit that Plaintiff had joined a mass of other revelers *outside* of the bar and was attempting to defend a friend when Glasby allegedly picked him up and "power-bombed" him into the concrete. While Denver's characterization of the parties'

6

interaction may ultimately bear out following discovery, Plaintiff's allegations control at this juncture.

Turning to Denver's training or lack thereof in crowd-management, the Amended Complaint alleges that following the George Floyd protests[6] in 2020, a DPD lieutenant, told Denver's Independent Monitor that "the prevailing attitude at DPD is that training is not important." Dkt. 11, ¶126. In addition, a DPD sergeant who developed a three-day field force operations class told the Independent Monitor that DPD had decided against providing the training because it was too time intensive. *Id.* at ¶127. Another officer said that he only received field force training when he was at the police academy, which amounted to four to eight hours total. *Id.* at ¶128. And during a trial related to the protests, the Independent Monitor testified that DPD officers "felt a need for greater emphasis on training in crowd management and field force operations." *Id.* at ¶133. According to the Amended Complaint, the Independent Monitor also made many recommendations regarding crowd management that Denver has failed to implement. *Id.* at ¶131.

Given the recency of the George Floyd protests, the Court concludes the allegations raise a reasonable inference that Denver was on notice regarding the need for officer training in crowd control and crowd management. Further, because Denver has allegedly failed to implement any of the Independent Monitor's

---

[6] In the spring of 2020, groups of demonstrators gathered in Denver to protest the murder of George Floyd and acts of violence perpetrated by police officers against Black Americans and people of color.

7

recommendations, the allegations also support a reasonable inference that Denver was deliberately indifferent to the risk of harm that could result from its failure to train.

Finally, turning to the element of causation, Plaintiff has alleged that on the night of the incident, despite working for Hayter's & Co. at the time, Glasby was wearing his DPD uniform, utility belt, and body-worn camera, and he was carrying his DPD service weapon. Dkt. 11 at ¶26. In addition, following the alleged assault on Plaintiff, Glasby reported to a supervisor that "he was involved in a use of force incident *while working as a DPD officer.*" *Id.* at ¶29 (emphasis added). Because the Amended Complaint alleges that DPD failed to train its officers in appropriate crowd control tactics, and because Glasby was a DPD officer at the time, there is a reasonable inference that Denver's failure to train directly caused Plaintiff's injuries. To be sure, the harm to Plaintiff is the type of harm one would plausibly expect from a failure to train officers in appropriate crowd management tactics.

\*   \*   \*

For the reasons shared above, the Court concludes Plaintiff has met his burden of alleging a claim pursuant to *Monell v. Department of Social Services*, and therefore, the City and County of Denver's Motion to Dismiss (Dkt. 33) is respectfully DENIED.

DATED: August 29, 2025.

8

BY THE COURT:

S. Kato Crews
United States District Judge

9